1832.

Gaul
v.
Miller.

---

### Gaul and wife *vs.* Miller and others.

Where, by a mistake of the solicitor for the defendant, which the counsel for the opposite party was aware of but did not attempt to correct, the names of the defendant's witnesses were not furnished at the commencement of the examination of the complainant's witnesses before the examiner, the court, upon an affidavit of the solicitor explaining the mistake, and upon a general affidavit of the defendant, under the advice of counsel, as to the materiality of the witnesses, permitted the witnesses to be examined, saving to the complainant the right to examine other witnesses on his part.

Where the attention of the party is called to the provisions of the 83d rule at the commencement of the examination, or he neglects to furnish the list of his witnesses with a full knowledge of the existence of that rule, he will not be allowed to examine his witnesses, without stating on oath the substance of what he expects to prove by their testimony, in addition to the excuse for not having complied with the rule.

Where a solicitor refuses to waive a default, or other technical advantage, which he has obtained over the adverse party, upon fair and reasonable terms, and thus compels him to apply to the court for relief, such solicitor will not be allowed costs for opposing the application.

March 20.

This was an application for leave to examine several witnesses on the part of the defendants, whose names had not been furnished to the solicitor of the adverse party, or to the examiner, before the commencement of the examination of witnesses, as required by the 83d rule. On a former day a similar application was made, founded upon the affidavit of the defendants' solicitor, that he did not suppose it necessary, under the rule, to furnish the names of the witnesses on the part of the defendants at the commencement of the examination of witnesses on the part of the adverse party. He therefore did not furnish the list of his witnesses until that examination closed, when he immediately gave the names of his witnesses, with notice of their examination; which notice the complainants' solicitor refused to receive. The affidavit also stated that up-

on a consultation with his clients, they deemed it advisable to take the examination of the witnesses. The chancellor thought the excuse, that the defendants' solicitor had misapprehended the effect of the recent rule of the court, sufficient. But he refused the application on the ground that there was no affidavit of the defendants as to the materiality of the testimony of these witnesses. The defendants were, however, permitted to renew their application on new affidavits, if the complainants' solicitor did not consent to waive the objection, and permit the witnesses to be examined. The defendants now produced their own affidavit that they were wholly ignorant of the rule of the court which made it necessary for them to furnish the names of their witnesses before the commencement of the examination. They also swore to the materiality of the testimony of the witnesses before named, and of two others since discovered, as they were advised by counsel, &c.

*J. Rhoades*, for the complainants.

*K. Miller*, for the defendants.

THE CHANCELLOR. After the passing of the statute, authorising the examination of witnesses openly before the examiner or commissioner, it was found that part of the evils which had been anticipated were actually produced by this change in the practice of this court. When the principal witnesses had been examined, the parties respectively were in the habit of protracting the closing of the proofs, to endeavor to fish up testimony to contradict the depositions of the witnesses who had been examined against them. By this course of proceeding, garbled conversations and much useless matter wholly irrelevant to the issue in the cause, were frequently introduced. There was also reason to apprehend it sometimes led to subornation of perjury. The object of the 83d rule was to remedy this evil, as far as practicable, by requiring the parties to interchange lists of their witnesses, either between themselves or in the presence of the examiner, before the taking of the testimony was commenced. It was supposed this

1832.

Gaul
v.
Miller.

could be done with as much ease as upon a trial at the cir-
cuit, or in the court of common pleas; where the respective
parties are obliged to prepare themselves, and in most cases
even to summon their witnesses and procure their actual at-
tendance, long before the commencement of the trial.

It was not intended, however, that any captious advantage
should be taken of a party who had, through inadvertence, neg-
lected to furnish the names of his witnesses in time. And in
this case it was perfectly evident that the defendants' solicitor
had misunderstood the effect and intention of the rule. Lib-
eral practice, therefore, required of the complainants' solicitor,
if he intended to hold his adversary to the strict letter of the
rule, that he should have pointed his attention thereto when
they were both present before the examiner, and have given
him fair notice that he must comply therewith or that he would
be precluded. If this course had been pursued, the court
would have required of these defendants something more than
a mere affidavit of the materiality of the testimony, before it
would have permitted them to examine witnesses not named
before the taking of the testimony was commenced. In such
a case, the court would require of the party, in order to bring
himself within the second clause of the rule, not only to fur-
nish an excuse for not naming the witnesses before, but also
to state on oath the substance of what he believed he should
be able to prove by them; so that the court could see he was
not seeking to violate the spirit and intent of the rule.

In this case the defendants must be permitted to examine
the witnesses named in the first application; but they are not
to be at liberty to examine them as to any declarations or con-
versations of the witnesses already sworn on the part of the
complainants. The two additional witnesses named in this
application have been hunted up, since the testimony on the
part of the complainants was closed. And as the affidavit
does not show what is expected to be proved by them, they
are not to be examined unless the complainants elect to ex-
amine other witnesses on their part. The complainants are
to be at liberty to examine any other witnesses on their part,
provided they give notice of such election, and furnish the
names, &c. of such witnesses to the adverse party, or to the ex-

aminer, before the taking of the testimony is resumed. And if they give notice of such election, the defendants are also to be at liberty to examine such witnesses as they may choose, upon furnishing their names to the adverse party or to the examiner, in the same manner. The time for closing the proofs is also to be extended thirty days from the entry of this order, to enable the respective parties to take their testimony.

From the facts appearing on these affidavits, I think the complainants' solicitor should have permitted these defendants to examine the witnesses first named, upon fair and reasonable terms. And I cannot encourage the sending of parties here for relief, with no other object than to obtain the costs of resisting the application. Therefore, neither party is to have any costs on this or the previous application. If the complainants' solicitor was willing to consent to the examination of the witnesses upon condition of being permitted to examine other witnesses on his part, or upon any other equitable terms, he should have stated those terms to the solicitor of the defendants at the time this request was made. In that case, if those terms had not been acceded to, and the complainants had been compelled to come here and resist the application, to enable them to obtain such terms as were just and reasonable, they would have been allowed their costs.